Good morning. May it please the Court, and if I, as the First Party, reserve two minutes for rebuttal. You may. Thank you. My name is Andrew Fisher. May it please the Court, my name is Andrew Fisher. I represent Timothy Denault and Jennifer Testa, the Appellants, who are seeking a reinstatement of the initial judgment entered upon, a jury verdict, in their favor. As prevailing parties, they were exonerated by the jury to the full amount of their claim. And this case is a classic example of why the Equal Access to Justice Act requires an award of attorney's fees for a prevailing party. The amount of damages requested was disproportionately small in relation to the value we place on the constitutional right that was trampled upon. Well, Mr. Fisher, Judge Young says that you only prevailed on a conversion claim which bore no entitlement to fees. You say that you prevailed on a constitutional claim under Section 1983. Correct. But the obvious constitutional claim, that is the warrantless, non-consensual seizure of the automobile from Ms. Testa's driveway by the officer, was ruled out of the case two weeks before trial by Judge Young. And your Notice of Appeal doesn't cite that order as one of the things you're appealing. That's correct. Okay. So what's the constitutional violation that you claim is in the case which Judge Young didn't say? Well, I think that Judge Young saw it initially because he... Well, what's the constitutional violation? The violation occurs, the car was seized, assuming a lawful seizure, for investigation of a crime. Once the investigation is complete, there's a duty to return evidence that's seized in the course of the investigation. There may be a duty to return that, but what's your authority for saying that rises to the level of a constitutional violation? The case that I cite in the papers is Wrightsville County of Bucks in a similar situation where property is seized, held by a district attorney. There is some dispute. The criminal case is resolved. The property belongs not to the criminal defendant, but the family members. The family members ask for the property back, and the Wrights Court talks about a second exercise of dominion over the property. So is there evidence that your client asked for the property back? There's much ado about this in my... Yeah, but is there evidence? He's unable to ask... First of all, there's no requirement that he ask for the property back. I'm still confused. What cause of the Constitution is breach? It seems to me the Fourth Amendment protects against unreasonable seizures. You already admitted that the seizure was ruled out of the case by Judge Young, and you haven't appealed that. There's an additional seizure. There are four additional exercises of dominion, or four, including the initial seizure. The second would be the duty arises out of the... And I think in this case, it's analogous to the Damon v. Huckowitz case, which opposing counsel relies upon, in that when there's a policy and procedure, it creates a duty of the law enforcement officer acting under color of law to follow the procedure. Procedure called for notice to the party owning the property held in evidence. Are you talking about the department's internal procedures? Yes, Your Honor. But go back to, I think, where Judge Sellier was trying to focus you in on. Is there any Fourth Amendment claim? As I understood it, you had a Fourth Amendment claim regarding the seizure. Judge Young struck that from the case. You haven't appealed it, the initial seizure. But as I understand it, you're saying you still had another seizure claim, a Fourth Amendment claim, with respect to the retention and exercise of dominion over the property. Correct. That doesn't arise from some internal department procedures. That arises from some federal principle. And I'm unaware of any federal law that says that the continued exercise of dominion is itself a seizure governed by the Fourth Amendment. Well, again, I would rely on the Wrightsville County of Bucks case, Your Honor, which says that continued exercise of dominion or when there's a duty to return the property. The duty arises first from the... But that can be a taking. The taking occurs, there's a second taking, when the defendant officers take the car and give it to the tow company, which is not consistent with any procedure, but it is consistent with depriving the plaintiff of his car. Did you advance any Fifth Amendment claim, either direct or incorporated, to the 14th in this case? As I've said, the exercise of... the taking of a property of another is a... the definition of conversion and the definition of a Fourth or Fifth Amendment taking are identical, but for the additional requirement of the acting under collar of law. But did you make a Fifth Amendment claim? I'm relying on a Fourth Amendment claim of... I know that's what I understood, too, and I have the same question that Judge Chiara did. Is there a Fifth Amendment claim in here? And I think the answer is no. The claim is for an improper taking under the Fourth Amendment. And the improper taking is when the defendant officer exercises control over the car by giving it, inconsistent with any procedure, inconsistent with any right as a police officer to the tow company, in effect knowing that this will deprive the plaintiff of his car forever. I think that's a reasonable inference from the facts. The plaintiff is in jail. The defendant officer knows that. The defendant officer, by failing to comply with the notice requirements, knows that the plaintiff won't even know. Plaintiff doesn't know. First of all, there's nothing in the record that the plaintiff is aware that the defendants have custody of his vehicle. It's clear from the record they admit they never give him notice. They have some conversation with Ms. Testa, but that's not notice to him. And by the time he learns, the car is encumbered with storage fees well beyond the value of the car or his ability to pay. And I think that it's reasonable to infer that the defendants knew that when they gave the car to the tow company. There was no reason to give the car to the tow company when they easily could have said to Ms. Testa, here are the keys, drive the car home. She was there asking for it. And they didn't do that. And failing to do that and giving the car to a third party that they know will result in the ultimate deprivation forever of the car is an exercise. It's a taking. There's no other way to look at it. You said she was there asking for them. I couldn't find in the record any indication that in the period of time after they had completed the warranted search that she made any demand for the car. I had understood that she had called up before and asked some questions about whether she could take the car. But certainly while they were still doing a warranted search, if we're not revisiting the search, they don't have to turn it over. Did she ever make a demand in the period of time when the car was releasable? If I may. Yes, you may. Thank you, Your Honor. I think the record's not clear when exactly she is. I think the court may be correct that she makes demand and it's not clear whether she's making demand for the car seat that belongs to her or the car seat. But it is clear that in fact the defendants make light of this in counsel's comments in the pre-trial conference and in the initial comments that are in the record. That Ms. Testa and Mr. DeNault have freely given each other the keys to their cars. I think defense counsel argues that she's given him the keys to her car to use in a crime. It's clear that they knew that the car was taken from her driveway. They asked her for the keys to the car when they came to take it. They knew that she had keys to the car. Thank you. I think you've answered my question. Thank you. Good morning. May it please the court, my name is Jeremy Silverfein and I represent Sergeant Ahern and the Chelmsford police officer defendants, the appellees. This is a case about the tail wagging the dog. The appellant's case is really about attorney's fees. Attorney's fees can only be secured in this instance by success on a constitutional violation. Well, of course he wants fees. Right. He's arguing that there's something that doesn't exist that was ruled out of the case. Excuse me. The district court charged the jury in terms of a constitutional violation. Isn't that great? I agree. And the jury, and submitted count one of the complaint to the jury, which charges a constitutional violation, and the jury returned the verdict favorable to the plaintiff on that count. So the request for fees viewed in that way certainly isn't frivolous. Except that the court recognized its error and converted what the jury returned from a constitutional violation to a conversion count. What gives the court the power to do that when the jury was never charged on conversion? I don't disagree. Well, I thought your point was that the post-verdict act of the judge in removing, in effect, the constitutional, the 1983 cause of action, was based on a realization of federal law to the effect that if the seizure is lawful in the first place, there is not a subsequent point at which a Fourth Amendment violation will occur simply by the retention. And that having recognized that that is the law, he in effect was saying, there was a legal error on my part in allowing them to consider it, and therefore I in fact withdraw the federal count and I leave the state conversion point. I thought that's how you got where you wanted to go. I agree on that as well. I think the way the court instructed the jury from the beginning had to do with constitutional violations, despite the appellee's request that this was not a constitutional violation, that the best, in effect, should have been dismissed or a summary judgment should have been issued for Sgt. Earn, and that the conversion didn't take place because there was no demand and no refusal, so on a directive verdict it should have been issued as well. But the appellants are arguing in a sense they want their constitutional violation, in a sense, reissued, for lack of a better term, so they can claim attorney's fees, but they don't get there. I know that, but I think our point now is, you know, was the error, in effect, in post-verdict denial that there is a constitutional claim even to be litigated. And what is your authority? I've already told you what I thought you were arguing, but tell me what you're arguing. What is your authority for the proposition that the court was authorized to withdraw the constitutional issue on the grounds that, as a matter of law, there could have been no constitutional violation on that record? What's their authority for... What's your authority? For permitting the district court to do what it did. It effectively entered a judgment... It's as if you had two counts, one constitutional, one state law conversion. What it effectively did was enter a judgment notwithstanding the verdict on the constitutional claim. So... And retaining the... And putting into effect the conversion judgment, even though the conversion had never been charged to the jury. Right. I agree that I believe the court made an error, and I believe that they should have entered a judgment for Sergeant Ahern at summary judgment. I think there was not... He never met... The plaintiffs never... The appellants never met the standard to get there. But you... Excuse me. You haven't filed a cross appeal here. Actually, we did. You did file a cross appeal? We did. Okay. And that cross appeal contests summary judgment? We do. Okay. We do. We said that right from the outset that the court should have entered judgment on behalf... You can't argue an appeal from a final verdict, a denial of summary judgment. What you have to argue, and this goes back to Justice Souter's question, is you have to convince us, I think, as I understand the record, that as a matter of law, no jury could find the constitutional violation actionable under Section 1983 based on the record as it existed at the conclusion of the trial. And so the pending question to you is what law or argument precisely tells us that no jury, even if they did, could have returned properly a finding of a constitutional violation? Because the seizure was ruled to be lawful. But Judge Young's charge to the jury mentions, I'm not sure where it derives from, mentions the term due process. I agree. It seems to me that he permits the jury under that charge to find a due process violation, which would be Fifth Amendment through the 14th rather than Fourth Amendment. And I believe I argued that that wasn't permissible. I said that it should not go to the jury, that there was no constitutional violation, because he had ruled that the initial seizure was lawful. And thereafter, the argument, at least from counsel and the judge, was that this had been converted. And I said you can't send it as a conversion because there's no demand and there's no refusal. No, forget conversion for a minute. What's your best authority for the proposition that if the initial seizure is lawful, there cannot be a Fourth Amendment violation recognized for an unduly long retention? Well, I would argue that they didn't retain the property. They had no dominion or control over the property when they gave it to us. Are you conceding that if they did retain it, there would be a constitutional violation? If they kept it for the period of time themselves? No, they just kept it in the parking lot at the police station. I actually don't. I think they notified all parties. Excuse me, you're arguing facts. I'm asking you what your legal authority is for the proposition that following a lawful seizure, there cannot be a cognizable Fourth Amendment violation for an unduly long retention. What is your authority for that? Judge, I don't know at this point. I don't know. And how about why isn't it that whatever happened with the seizure, whatever claim, somehow Judge Young got to the point where he's instructing the jury on a due process violation regarding the retention when the seizure was all out of the case. So it does seem here that your client basically had the car, had determined it wasn't evidence of a crime. They knew. You know the person wants it back. And yet they do this thing that effectively transfers all the economic value of the car to the towing company who they have a relationship with. Is there any due process taking in there for a citizen when the town does that to the car? Well, they notified the agent for Mr. Donnell that the car was available at the tow lot. They don't have the capacity to keep it at the police station. So they said you can give it back to her instead of giving it to the towing company. Right. They said, come on, you can get it. And she didn't want to come down. She said on the testimony, I'm the agent for him. She didn't want to come down for it for whatever reason. Whatever reason she thought she'd be interviewing, she didn't want to come down. And you're saying the testimony on that point, a jury could have only interpreted it in the way you're interpreting it. Despite the fact she called up twice to find out, what do I need to do to get the car? Right. And they said there's testimony from both the tow truck owner who said I told her to come down and we'd work something out. And the police who said we had a couple of conversations. What's her testimony on that point? Say again? What's her testimony on that point? Her testimony is that she did have conversations. And that she didn't want to go down because I think she believed that they were going to interrogate her. But she didn't want to go down. And at a certain point, he was asking Mr. Dunnall, did you want the car back? And he said no. And they apparently, the towing company at a certain point, offered the car back for free. And he said no. And I suggest to you that we should have been able to, at least in terms of the conversion, have been able to put that in because he was offered the car, he declined it. But is there, did she admit that she was offered the car back for free and she declined it? No, she said they had conversations with her. Okay, but we're looking at a record under a JNOV standard here. So don't tell us things that are favorable to your client. You have to convince us that if we just look at the undisputable testimony, you win. Correct. She did acknowledge that they had conversations about coming down and picking the car up. And she said, you know, something to the effect that I don't want to come down. Thank you, Your Honor. Thank you. I would ask, I don't have time to rebut everything, but there are statements in the record about him not wanting the car. I don't know that they're in the record. I would ask if the Court can find them. I think the evidence is that Ms. Testa couldn't afford to buy another car seat, let alone, and that's why she was concerned about getting the car seat back. She certainly couldn't afford. What her testimony was is she didn't have the resources to get the car back, which is just what I was arguing before. The second thing is the summary judgment where the plaintiff didn't raise it as an issue on appeal. If the defendant is going to cross appeal, the defendants have an obligation to put it in the record. It's not in the summary judgment record, it's not in the record appendix, and it's therefore not before the Court. What about her message on the phone machine? What are we to make of that, the phone message she left, the recorded message? Didn't she leave a recorded message in some way opting not to come down and get the car seat? Yes, and I think her explanation was that, and I think the reasonable inference is she, if she'd come down and talked to her, and she understood coming down and talking to her is, we'll give you the car back if you rat out Mr. Dinnall, or if you cooperate with us, and that's how she perceived it, I think. I think she declined to do that, and that's why she didn't return. One thing I would like to address, if I can have just another moment, is this question of a demand. There is a lot, the defendants make a lot about the requirement for a demand. First of all, the demand was impossible because the plaintiffs didn't know that they had his car. The second thing, the element of a demand, all the cases that speak of a demand are cases in a lender-creditor context or a similar context where the owner of the property has given the property, either a security interest in the property or physically given the property to the person holding the property. In such a case, it's appropriate that the owner of the property ask for it back before he go to court. This is a different situation. It's, I think, why the Reeds case is appropriate. There's one other case, if one digs through the sub-sites in the reply brief of the defendants, involving a sheriff and a real estate attachment where it's held that no demand is required in that circumstance, and I think that's the case that's more comparable to this case. What case are you referring to? I don't have it. If I could supply the case site by letter to the court. By a 28-day letter. Thank you. Thank you.